CUENAT *v.* KEENAN.

CANCELLATION OF INSTRUMENTS — EQUITY — UNDUE INFLUENCE — COMPETENCY—DECREE.

Although a decree, canceling certain deeds from decedent to defendant on the ground of incompetency and undue influence, is affirmed, and the finding of the trial court that certain notes and securities in defendant's hands belong to the estate of deceased, is found to be supported by the testimony, defendant is entitled to an allowance for services rendered in supporting and caring for decedent, and for taxes paid upon the property deeded to defendant, and for the expense of burying the deceased, and permission to present his claim therefor in probate court is included in the decree.

Appeal from Wayne; Murfin, J. Submitted February 9, 1911. (Docket No. 144.) Decided March 31, 1911.

Bill by John F. Cuenat, Marie C. Chambers, and John F. Cuenat as administrator of the estate of Clemence Surleau, deceased, against Mary V. Keenan, personally and as administratrix of the estate of Jacques Surleau, deceased, to set aside certain deeds and for an accounting. From a decree awarding complainants a part of the relief prayed, both parties appeal. Modified and affirmed.

*William M. Mertz* and *Frank N. Renaud,* for complainants.

*James H. Pound,* for defendants.

STONE, J. The controversy in this case is between John F. Cuenat, as administrator of the estate of Clemence Surleau, deceased, and John F. Cuenat and Marie C. Chambers, nephew and niece of said Clemence Surleau, deceased, and her sole heirs at law, as complainants, and Mary V. Keenan individually, and Mary V. Keenan as executrix of the last will and testament of Jacques Surleau, deceased, as defendant.

The questions involved are whether Clemence Surleau was mentally incompetent to make two deeds of conveyance, one dated October 25, 1900, purporting to convey to defendant Mary V. Keenan 22 acres of land on Snyder road, in Greenfield township, Wayne county, and one deed dated December 12, 1904, which purported to convey to defendant Mary V. Keenan a house and lot at 1045 Twelfth street, Detroit; and whether said Clemence Surleau was under the influence and control of said Mary V. Keenan, or her said husband, Jacques Surleau, or of both of them, when these conveyances were made. A further question involved is whether upwards of $8,000 in money and notes claimed to have belonged to said Clemence Surleau in her lifetime passed, directly or indirectly, into the

possession and control of said defendant Mary V. Keenan without consideration, and by undue influence and advantage.

Complainants filed their bill in equity to set aside these conveyances on the ground of mental incompetency of Clemence Surleau, fraud, undue influence, and want of consideration, and to compel an accounting at the hands of defendant for moneys and personal securities so received. Defendant's answer consists of a general denial, alleging a purchase of the 22 acres of land for the sum of $3,500 in cash payments claimed to have been made to Clemence Surleau and her said husband. The answer also claims transfer to the said defendant of the home on Twelfth street in consideration of the care and maintenance of said Clemence Surleau and her husband, Jacques Surleau; the title to the Twelfth street property being in Jacques Surleau and Clemence Surleau as tenants by the entireties. The answer also admits the receipt of certain notes assigned by Jacques Surleau to the defendant, the principal of which aggregated about $1,750, and admitting that a certain judgment obtained in February, 1901, may belong to the estate of Clemence Surleau, deceased.

The record is a large one, there being over 400 pages of the testimony, which was taken in open court before the circuit judge who heard the case. The questions presented and discussed by counsel are largely questions of fact. We have read the record with care, and have considered the evidence in the case. It would not be profitable to refer to the same at length. The circuit judge found that Clemence Surleau, deceased, was not, during the last years of her life, mentally competent to transact business. Clemence Surleau died at the home of the defendant on April 10, 1907, having lived with the defendant at the latter's home from July, 1905, to the time of her death. Jacques Surleau died also at the home of the defendant on April 2, 1906, having lived with the defendant and in her family after July, 1905, down to his death. The 22 acres of land had been purchased by Clemence

Surleau in 1864. The house and lot above referred to were purchased by Clemence Surleau and Jacques Surleau on April 4, 1893, and soon after the purchase of the last-mentioned property Jacques Surleau and Clemence Surleau, his wife, moved into the city and lived upon this property on Twelfth street until they went to live with the defendant in July, 1905, except that Clemence Surleau had been for three months confined in the Emergency Hospital in the city of Detroit.

The circuit judge granted the relief prayed for as to the house and lot on Twelfth street, but denied relief as to the 22 acres, holding that the proof introduced in the case was not sufficient to overcome the presumption of the payment of the consideration of $3,500. The evidence tends to show that the defendant purchased the said 22 acres of land with the expectation that she soon could dispose of it at an advanced price. This she has not been able to do. There is no evidence in the record that the said 22-acre parcel was worth more than the consideration named, to wit, $3,500. The complainants are unable to produce any positive or direct evidence that the consideration named in this deed was not actually paid by the defendant. This was a transaction which took place in 1900. There is positive and direct evidence in the record, given by the said defendant and her husband, that this consideration was actually paid in cash.

The evidence shows that Clemence Surleau was a woman of peculiar and weak mind. While she had not been strong mentally, yet she had in the earlier years of her married life with Jacques Surleau, which marriage took place in December, 1875, been strong enough in mind to dominate and control him to such a degree that she handled and controlled their property. Prior to moving to the city they had lived upon 40 acres of land which belonged to her, save that Jacques seemed to have title with her to 10 acres of the homestead. They had farmed this property, and had sold produce in the city. The evidence tends to show that, after they moved into the city, the

said Clemence Surleau grew weaker in mind and body, and her husband, Jacques, began to get control and possession of the personal property and money, the latter of which was obtained for the sale of the 40-acre homestead. We are not satisfied from this record that at the time the sale of the 22-acre parcel was made Clemence Surleau was not of sufficient mental strength to make the conveyance, and to know what she was doing. We agree with the circuit judge, in view of all the evidence in the case, that it does not sufficiently appear that the consideration stated in the deed was not actually paid to warrant setting said deed aside. From the date of that deed the defendant took control of the 22-acre parcel, and has ever since controlled it, leasing it, from time to time, to different parties who were witnesses in the case. The consideration, if paid, seems to have been a reasonable one for the conveyance of this property. We do not feel warranted in disturbing the conclusion reached by the circuit judge with reference to this parcel of land.

Referring to the sale and the transfer of the city house and lot, which occurred over four years later, the circumstances were very different. The mental condition of Clemence Surleau was one of degree, and we gather from the testimony that she failed both physically and mentally from 1900 to December, 1904. The record shows that this city property was, so far as the deeds show, owned by Clemence Surleau and her husband as tenants by the entirety. The property would therefore go to the survivor. As we have already shown, Clemence Surleau survived her husband for about one year. It is not claimed by defendant that any money consideration was paid for this deed. The consideration named in the deed is $1 and other valuable considerations. The deed reserved to the grantors the possession, use and control of said premises for and during their natural lives. The deed also contained this clause:

"As a further consideration for this deed said second

party shall maintain and care for first parties whenever called upon so to do by first parties, or either of them, during their natural lives."

From the circumstances surrounding the execution of this deed, as disclosed by the evidence, we are satisfied with the conclusion reached by the circuit judge that Clemence Surleau at the time of its execution was not mentally competent to execute it, and that she was at that time dominated by, and under the influence of, her husband and the defendant. Sufficient appears in the evidence to warrant us in saying that an effort was then being made by Jacques Surleau and the defendant to get control of the property of the Surleaus.

Treating this deed as void, or at least voidable, and considering that Clemence Surleau survived her husband, and was after his death the surviving owner of this property, and in view of the further circumstances which we are about to state, we are satisfied that this deed should be set aside, and held for naught. The evidence shows that on the 1st of June, 1905, Jacques Surleau, who had succeeded in getting into his name a number of promissory notes which had been made for money loaned from the funds of Clemence Surleau, made a will in which he devised and bequeathed all his property, both real and personal, to the defendant, providing, however, that, if his wife survived him, the defendant should maintain and care for his wife during her lifetime. The defendant was made executrix of this will. Subsequently, and in the month of October, 1905, the several notes hereinafter mentioned were indorsed over and transferred by Jacques Surleau to the defendant.

Complainants claim that the defendant, by conniving with the said Jacques Surleau, became possessed of a large amount of other money belonging to the estate of Clemence. In our judgment the evidence is too vague and indefinite to warrant us in holding that any other moneys than those evidenced by the notes and judgments hereinafter referred to were traced to the defendant. The de-

cree below directed the defendant to assign and deliver to complainant John F. Cuenat, as administrator of the estate of Clemence Surleau, the following promissory notes, the same being notes made by various parties in favor of Jacques Surleau or Clemence Surleau, or both of said persons, and particularly described as follows: One note made by George Pillard in the principal sum of $800, dated April 2, 1904, and bearing interest at the rate of 6 per cent. per annum. Two notes made by William Holmes, one for $500 and one for $200, dated, respectively, February 24, 1905, and April 26, 1905, both bearing interest at 6 per cent. per annum. One note made by Charles Richardot in the principal sum of $300, the date of which does not distinctly appear, bearing interest at the rate of 6 per cent. per annum, and also the judgments obtained by the defendant upon the said William Holmes' note for $200, and the said Charles Richardot's note of $300, appearing upon certain dockets of justices of the peace as described in the decree, and also a certain judgment obtained in the circuit court for the county of Wayne on transcript filed for $428.88 in a certain suit wherein Jacques and Clemence Surleau were plaintiffs and Charles Loueys and Elizabeth Loueys were defendants.

It was further found by the circuit judge that the money claimed against one Fred Pillard on a mortgage and note executed by him to Jacques Surleau, bearing date March 5, 1898, was a part of the estate of Clemence Surleau, deceased, and did not belong to Jacques Surleau. The decree also provided that the defendant should pay forthwith to said John F. Cuenat, administrator as aforesaid, the sum of $248, the same being the principal sum of the note amounting to $200 made by James Kennedy to Jacques Surleau, together with interest on said note at the rate of 6 per cent. per annum from and after October 18, 1895; and, further, that said defendant pay to said administrator the sum of $124, the same being the principal sum of a note of $100 made by Abel Petrequin to Jacques Surleau, together with interest on said

note at the rate of 6 per cent. per annum from and after October 18, 1905; and, further, that said defendant pay forthwith to said complainant administrator all sums of interest and principal collected by her on any of said notes and mortgages above mentioned, and not otherwise provided for in the decree, and that defendant should deliver to said complainant administrator all personal effects, including any and all household goods, furniture, and books, and all other effects and personal property that came into her possession that belonged to said Clemence Surleau in her lifetime. The decree also provided that said defendant should account forthwith to said complainant administrator for rents and profits from said house and lot on Twelfth street at the rate of $16 per month, payable monthly from and after April 1, 1907, with interest on said rental at 5 per cent. per annum, and the court found that at the date of the decree there was due by reason of said rent the sum of $474.97. Both complainants and defendant have appealed from said decree.

As we have already stated, it is undisputed that said Clemence Surleau lived with, and was cared for by, the defendant from about July 7, 1905, down to her death. In fact, the evidence shows that she was well and properly cared for during that period, and was buried by and at the expense of said defendant. The condition of the pleadings and evidence is such that we are not able to determine the value of this service. We think that it is just and equitable that the defendant should be compensated for the care, support, and burial aforesaid of said Clemence Surleau, as well as for any and all taxes paid by the defendant upon the Twelfth street property after the date of the deed to her. For these services and items, we think the defendant should be at liberty to present a claim in the probate court in the matter of the estate of Clemence Surleau, deceased, to be passed upon by the probate court.

To that extent the decree of the circuit court will be modified, and in all other respects it will be affirmed.

Complainants will recover against the defendant their costs to be taxed, except that complainants, they having also appealed, shall pay to defendant one-half of the cost and expense of obtaining transcript of record and the printing thereof, and of the register's fees on perfecting appeal.

OSTRANDER, C. J., and BIRD, BROOKE, and BLAIR, JJ., concurred.